# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2368-17T1

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

      Plaintiff-Respondent,

v.

S.K.,

      Defendant-Appellant,

and

J.B.,

      Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF N.K.,

      a Minor.

_____

Submitted October 22, 2018 – Decided  November 1, 2018

Before Judges Sabatino and Mitterhoff.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FG-16-0038-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Sarah E. Chambers, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Julie B. Colonna, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith A. Pollock, of counsel; Joseph H. Ruiz, Designated Counsel, on the brief).

PER CURIAM

S.K. appeals from a January 10, 2018 judgment terminating her parental rights to her daughter N.K.[1] and granting the Division of Child Protection and Permanency ("Division") guardianship of N.K., with the plan that N.K. be adopted by her resource parent. S.K. argues that the Division failed to prove each prong of N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence as required to terminate parental rights. The Division and the child's law guardian urge that we affirm the judgment and allow the adoption to proceed. Having considered the parties' arguments in light of the record and applicable legal

---

[1] We use initials to protect the confidentiality of the participants in these proceedings. R. 1:38-3(d)(12).

standards, we affirm for substantially the reasons explained by Judge Imre Karaszegi, Jr. in his comprehensive oral decision rendered on January 10, 2018.

The facts and evidence are detailed in Judge Karaszegi's oral opinion, which he rendered after a three-day guardianship trial. A summary of the relevant facts will suffice here. As a minor, S.K. was in the care and custody of the Division since she was two years old, due to allegations of substance abuse, neglect, and sexual abuse by her parents. S.K. reported that she lived in thirty-six placements as a child and was never adopted. S.K. signed herself out of the Division's care at the age of eighteen in January 2012.

In March 2012, when S.K. was still eighteen, she contacted the Division and requested that her services be reinstated. She was then three months pregnant with N.K. and living in Eva's Village shelter program. She admitted that when she entered the shelter she had tested positive for marijuana, but denied that she was currently smoking marijuana. S.K. sought assistance in obtaining permanent housing and support with her pregnancy. The Division referred S.K. for a short-term substance abuse program and parenting classes.

In January 2013, the Division received a report from Eva's Village with concerns about then four-month-old N.K. The shelter reported that S.K. returned to the program looking for housing and again tested positive for

marijuana. Eva's Village also had concerns that N.K. was not up to date with her immunizations. When S.K. met with a Division worker, she reported that she had been smoking marijuana six times daily, but was currently attending intensive outpatient drug treatment at Eva's Village and had not used drugs since enrolling in the program.

From January 2013 to June 2014, the Division provided many services to S.K. The Division assisted S.K. in securing housing through an independent living agreement by which the Division would provide stipends to S.K. if she was enrolled in school or maintained employment. The Division provided S.K. with incidental funds in addition to the independent living stipends and referred S.K. to aging-out programs to help S.K. transition into adulthood. The Division also referred S.K. to drug treatment programs to address her persistent marijuana use, which S.K. inconsistently attended and did not complete.

On July 7, 2014, S.K. went to the Division office to discuss her monthly stipend checks. The Division was no longer providing funds for rent because S.K. had relocated from her independent living apartment. S.K. admitted that she had not followed up with her substance abuse treatment, had not obtained health insurance or immunizations for N.K., and had used marijuana the prior weekend. S.K. requested that the Division take custody of N.K. so that she could

better comply with services. S.K. filled out a Dodd Letter[2] and consented to the removal of N.K. from her custody.

Then twenty-two-month-old N.K. was placed in a non-relative resource home, where she remains to date. From July 2014 to February 2017, the underlying abuse and neglect and guardianship litigations ensued. During this period, the Division arranged for weekly supervised visitation between S.K. and N.K. S.K. sometimes attended visitation consistently, but often missed or was late to scheduled visits. S.K. also enrolled in a number of substance abuse treatment programs, but only completed one of these programs. The Division also referred S.K. for psychological and psychiatric evaluations, in which S.K. was diagnosed with depression, mood instability, and childhood trauma. In November 2015, S.K. was psychiatrically hospitalized following a suicide attempt.

The Division had only limited phone contact with S.K. from December 2016 until March 2017 and was unaware where she was residing. On February 1, 2017, the trial court approved the Division's plan of termination of parental rights. The Division was in contact with S.K. in April 2017, but was unable to

---

[2] Pursuant to the Dodd Act, N.J.S.A. 9:6-8.29(a), a child may be removed from their place of residence without a court order if there is imminent danger to the child's safety, or health, and there is insufficient time to apply for a court order.

locate S.K. from May to July 2017. In August 2017, S.K. reported to the Division that she had been living in the Bronx with her stepmother. She had been hospitalized from July 27 to 31, 2017, for treatment of schizophrenia.

On October 26, 2017, S.K. attended psychological and comparative bonding evaluations with Dr. Mark Singer. Based on these evaluations, Dr. Singer concluded that S.K. was unfit to parent N.K. currently or in the foreseeable future. He found that S.K.'s history of limited compliance with substance abuse and mental health treatment suggested that S.K. had a high risk of relapse or deterioration of her mental health.

With respect to bonding, Dr. Singer found that N.K. had dual attachments to both S.K. and her resource parent, but she viewed her resource parent as her psychological parent. He noted the N.K. has lived with her resource parent roughly eighty percent of her life. He predicted that N.K. would experience a significant negative reaction to the loss of either relationship, but the resource parent would be able to mitigate the loss of the relationship with S.K. and N.K.'s reaction to the loss of her relationship with S.K. would not be severe and enduring. Based on N.K.'s need for permanency, Dr. Singer recommended termination of S.K.'s parental rights followed by adoption by the resource parent.

The guardianship trial was held before Judge Karaszegi on December 13, 14, and 22, 2017. The Division presented the testimony of two caseworkers and Dr. Singer, who was qualified as an expert witness in the field of psychology with an emphasis on parenting. S.K. testified on her own behalf. The child's law guardian did not present any witnesses and supported the Division's application to terminate S.K.'s parental rights.

On January 10, 2018, Judge Karaszegi rendered an oral decision. The trial judge summarized the testimony of each witness and found all the Divisions' witnesses to be credible. The trial judge then discussed each prong.

As to prong one, the trial judge concluded that the health and development of N.K. was harmed and would continue to be harmed by the lack of a stable parental relationship with S.K and the lack of a permanent home. The trial judge found that S.K. "has been unable to address her substance abuse and mental health issues, issues that would pose a risk to N.K.'s safety should this matter be continued." Similarly, as to prong two, the court concluded that S.K. was unable to eliminate the harm caused to N.K., because S.K.'s lack of progress during the litigation supported that she would be unable to address her housing, mental health, and substance abuse issues.

A-2368-17T1

With respect to prong three, the trial judge found that the Division provided S.K. with reasonable services, including housing assistance, visitation, substance abuse treatment, mental health treatment, and incidental costs. The trial judge also found that there were no viable alternatives to the termination of parental rights, noting that the relatives whom S.K. had provided as potential placements had been ruled out by the Division and that kinship legal guardianship was not a viable option because the resource parent was willing to adopt N.K.

Finally, with respect to prong four, the trial judge credited the opinion of Dr. Singer and found that termination of parental rights would not do more harm than good. The trial court found that it was in N.K.'s best interests to achieve permanency with her resource parent, rather than to expose N.K. to the harms that would result from S.K.'s parenting deficits and from the loss of a relationship with the resource parent. For these reasons, the trial court found that the Division had met its burden to establish all four prongs of N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence and entered an order terminating S.K.'s parental rights.

Our scope of review on appeals from orders terminating parental rights is limited. In such cases, we will generally uphold the trial court's findings, so

8

long as they are supported by "adequate, substantial, and credible evidence." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014). We also must give substantial deference to the family court judge's special expertise and opportunity to have observed the witnesses firsthand and evaluate their credibility. Id. at 552-53. Guided by these standards, we conclude that Judge Karaszegi's factual findings are amply supported by the credible evidence in the record, and his legal conclusions are unassailable. We thus affirm for substantially the same reasons expressed by the trial judge. We add only the following brief comments.

On appeal, S.K. argues that the trial court erred in its analysis of prong three by failing to apply a heightened burden for reasonable efforts based on her involvement with the Division as a minor. See N.J. Div. of Youth & Family Servs. v. L.J.D., 428 N.J. Super. 451, 489 (App. Div. 2012) (holding that Division faced "heightened burden" to provide reasonable efforts to fourteen-year-old mother who was in the custody of the Division). We agree that L.J.D. calls for a heighted burden to provide reasonable efforts to a minor parent who is in the custody of the Division "dictated by the special circumstance posed by a child-parent's young age." Ibid. In such cases, "the Division's efforts must include satisfactory services to aid the development of the child-parent's

maturation and necessary skills to adequately parent his or her child." Ibid. Nonetheless, there is "no statutory authority or precedent holding that the Division's failure to provide services to a child under its care can be considered in a subsequent guardianship matter involving that same child in her later capacity as a parent when assessing the adequacy of services required under Title 30." New Jersey Div. of Child Prot. & Permanency v. N.C.M., 438 N.J. Super. 356, 369 (App. Div. 2014) (holding that Division made reasonable efforts despite inadequacies in services provided to defendant when she was a minor in the custody of the Division).

Considering these principles, we agree with the trial court that the Division was not subject to L.J.D.'s heightened burden in this case. Unlike the fourteen-year-old parent in L.J.D., eighteen-year-old S.K. was no longer a minor child when she requested the Division's assistance in March 2012 and was no longer in the custody of the Division. See L.J.D., 428 N.J. Super. at 489. Nonetheless, we note that the Division has a statutory duty to provide services to S.K. as a youth who was aging out of foster care. See N.J.S.A. 30:4C-2.3 (providing that the Department of Children and Families shall provide services to an individual from ages eighteen to twenty-one, so long as he or she received services after the age of sixteen, had not refused or requested termination of

services, and the commissioner determines that services would be in the individual's best interests and assist the individual in becoming independent).

Accordingly, it is relevant to consider whether the Division provided S.K. with services tailored to addressing her needs as youth aging out of foster care in assessing the reasonableness of the Division's efforts under prong three. The record shows that the Division adequately provided S.K. with such services, including independent living stipends, incidental funds, and referrals to aging-out programs. Additionally, as the trial court noted, the Division provided S.K. with a myriad of other services, including housing assistance, visitation, substance abuse treatment, and mental health treatment. Indeed, the Division provided these services for much longer than the "twelve-month timeframe mandated by N.J.S.A. 30:4C-61.2(a)(2) and N.J.S.A. 9:6-8.54(b)." L.J.D., 428 N.J. Super. at 489. For these reasons, we find that the trial court's finding on prong three is supported by substantial credible evidence in the record.

We also find that the trial judge's findings on the remaining three prongs of N.J.S.A. 30:4C-15.1(a) are amply supported by the record. The arguments raised by S.K. on these prongs are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2368-17T1